

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: December 19, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN THE MATTER OF:** | **CHAPTER 12 NO.:** |
| **STAFFORD A. SHURDEN** | **17-11412 – NPO** |

### ORDER CONFIRMING THE DEBTOR'S CHAPTER 12 PLAN, AWARDING A
### FEE TO THE DEBTOR'S ATTORNEY AND RELATED ORDERS

Following the meeting of creditors held pursuant to 11 U.S.C. 341 at which the Debtor appeared in person to be examined by creditors and other interested parties, a hearing was held pursuant to 11 U.S.C. 1224 at which the Trustee appeared in person and the Debtor appeared by his attorney.

Continuances, if any, were:  From October 5, 2017 to November 30, 2017 (Docket Number 54). (The Debtor hereinafter referred to in the masculine singular, even though this may be a joint case, a corporate or partnership case or the Debtor be female.  All references to "Rules" shall be interpreted as referring to the Bankruptcy Rules unless the context indicates otherwise).

At such hearing the following objections to confirmation of the Debtor's Amended Chapter 12 Plan (Docket Number 49) were considered:  Objection to Confirmation by Independent Bank (Docket Number 32); said Objection being resolved by Agreed Order entered on October 10, 2017 (Docket Number 48); Objection to Confirmation by Pinnacle Agriculture Distribution, Inc. (Docket Number 60); said Objection being resolved by Agreed Order entered on December 6, 2017 (Docket Number 66); Objection to Confirmation by  Planters Bank & Trust Company (Docket Number 62) said Objection being resolved by Agreed Order entered on December 6, 2017 (Docket Number 66); Objection to Confirmation by Southern Bancorp Bank (Docket Number 63) said objection said Objection being resolved by Agreed Order entered on December 12, 2017 (Docket Number 68); In addition to the objections, Counsel for the Debtor has advised that he anticipates that a modification of the confirmed plan will be necessary, subject to Court approval.

At the hearing the Court considered the matters presented by the Trustee, counsel for the Debtor and by other interested parties, if any, and upon the pleadings and statements of parties and of counsel, and on the evidence presented, the Court finds that:

A.      Written notice of the meeting of creditors held pursuant to 11 U.S.C. 341 and of this hearing on the confirmation plan was given as required by Rule 2002;

B.      The plan as presented for confirmation (hereinafter referred to as "the plan") complies with the provisions of Chapter 12 of Title 11 of the United States Code and the other applicable provisions of said Title;

C.      Any fee, charges or other amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation has been paid;

D.      The plan has been proposed in good faith and not by any means forbidden by law;

E.      The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date; and

F.      With respect to each allowed secured claim provided for by the plan, the holder of such claim either accepted, or was deemed to have accepted, the plan or in the alternative –

    a)      (i) the plan provides that the holder of such claim retain the lien securing such claim; and

        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    b)      the plan proposes to surrender the property securing such claim to the creditor.

G.      If the Trustee or the holder of an allowed unsecured claim objected to the confirmation of the plan, then the Court finds that:

    a)      the value of the property to be distributed under the plan on account of such unsecured claim is not less than the amount of such claim, or

    b)      the plan provides projected disposable income, [as 'disposable income' is defined in 11 U.S.C. 1225(2)] to be received by the debtor in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or the value of the property to be distributed under the plan in the three (3) year period, or such longer period as the Court may approve under Section 1222(c) is not less than the Debtor's projected disposable income for such period.

IT IS ORDERED THAT:

1.      The Debtors' Plan is confirmed, with the modifications as specified in the agreed orders as follows: Objection to Confirmation by Independent Bank (Docket Number 32); said Objection being resolved by Agreed Order entered on October 10, 2017 (Docket Number 48); Objection to Confirmation by Pinnacle Agriculture Distribution, Inc. (Docket Number 60); said Objection being resolved by Agreed Order entered on December 6, 2017 (Docket Number 66); Objection being resolved by Agreed Order entered on December 6, 2017 (Docket Number 66); Objection to Confirmation by Planters Bank & Trust Company (Docket Number 62) said Objection being resolved by Agreed Order entered on December 6, 2017 (Docket Number 66); Objection to Confirmation by Southern Bancorp Bank (Docket Number 63) said objection said Objection being resolved by Agreed Order entered on December 12, 2017 (Docket Number 68); In addition to the objections, Counsel for the Debtor has advised that he anticipates that a modification of the confirmed plan will be necessary, subject to Court approval.

2.      The Debtor, or his employer, or any entity that owes a debt that is property of the estate shall make the payments to the Trustee required by the plan as confirmed or as hereafter modified by the Agreed Orders attached as Exhibit "A". The payments shall be made by the Debtor to the Trustee as indicated by the payment schedule attached hereto as Exhibit "B". The Trustee is entitled to collect the statutory percentage fee on all payments received under the Chapter 12 Plan and made pursuant to the payment schedule attached hereto as Exhibit "B". The Trustee shall order [per Section 542(b)] or request the Court to order [pursuant to Section 1226(c)] any entity from whom the Debtor received income to pay all or any part of such income to the Trustee.

3.      The Debtor shall attach to or make a part of Chapter 12 plan, a description of all real property owned or leased by him for farming or other agricultural purposes and execute unto Trustee, pursuant to Uniform Commercial Code, a UCC-1F form concerning farm products or other instruments

to perfect a lien on farm and agricultural products for the benefit of creditors provided for under confirmed plan.

4.      All property shall remain property of the estate and shall vest in the Debtor only upon dismissal, discharge or conversion.   The Debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee.

5.      The Trustee shall:
a)      Keep a detailed record of all receipts, including the source or other identification of each receipt, and of all disbursements [11 U.S.C. 1202(b)(1)]; and
b)      File with the Court, or if applicable, with the entity providing addressing service for the Court and the Trustee, notices of creditor's address changes brought to the attention of the Trustee.  [Rule 2002(g)]; and
c)      Deposit all funds received by the Trustee under the plan with an entity which provides insurance, guaranties or deposits in the manner prescribed by 11 U.S.C. 345.

6.      Pursuant to 11 U.S.C. 1226 the order of payment, unless otherwise directed shall be:
a)      Any unpaid claim of the kind specified in Section 507(a)(1) of Title 11 U.S.C.;
b)      The percentage fee fixed for the Trustee pursuant to 11 U.S.C. 1202;
c)      Creditors whose claims are timely filed and allowed in such amounts and order of preference as may be provided by the plan or as may be required to provide adequate protection of the interest of any entity with an interest in property of the estate.

7.      The Trustee, the Debtor and attorney for the Debtor shall examine proofs of claim, or summaries thereof, and shall object to the allowance of improper claims as provided by 11 U.S.C. 704(5).

8.      The Trustee shall at least once yearly provide to the Debtor and the Debtor's Counsel a report showing the funds received and the disbursements made by him since the date of the last report and shall upon completion of the plan file with the Court a final report and account containing or incorporating by reference a statement of receipts and disbursements.

9.      Ninety days after the final distribution, the Trustee shall stop payment of all checks then unpaid and file with the Clerk of the Court a list of the names and addresses, so far as known, of the persons entitled to such payments and the amounts known thereof.  The unclaimed funds shall be paid into the Court and disposed of under Chapter 129 of Title 28. [11 U.S.C. 347].

If Applicable:

10.      The Debtor has paid all amounts that are required to be paid under domestic support obligation that first become payable after the date of the filing of this petition as specified in 11 U.S.C. 1225(a)(7).

11.      Upon completion of plan payments provided during the four (4) year term of plan, Debtors shall receive a discharge on all unsecured debts provided for.  Upon completion of all payments that exceed the four (4) year term of the plan Debtors shall receive a discharge of said debts.

12.      That, a copy of the Debtor's Chapter 12 Plan of Reorganization is attached hereto as Exhibit "C". This Plan is hereby confirmed, with the modifications listed in the Agreed Orders attached as Exhibit "A" and modifications made herein.

13.      That, all payments will be made by the Debtor in accordance with the Plan attached as Exhibit "C", or as hereafter modified by the Agreed Orders attached as Exhibit "A", or as modified herein.  It is ordered that the payments shall be made by the Debtor to the Trustee, Harold J. Barkley,

Jr., P. O. Box 5069, Jackson, MS 39296-5069, as indicated by the payment schedule attached hereto as Exhibit "B".

**ALLOWANCE OF ATTORNEY'S FEES:**

That, Debtor(s) Attorney(s) shall hereafter file an Application for an Allowance of Attorneys Fee for representation of Debtor in this cause if any further attorney's fees are sought by Debtor's Attorney.

**##END OF ORDER##**

APPROVED:

/S/HAROLD J. BARKLEY, JR.
HAROLD J. BARKLEY, JR. – MSB #2008
CHAPTER 12 TRUSTEE
POST OFFICE BOX 5069
JACKSON, MS 39269-5069
PHONE: 601/362-7153
FAX: 601/366-7442
E-MAIL: HJB@HBARKLEY13.COM

/S/ROBERT GAMBRELL
ROBERT GAMBRELL
ATTORNEY FOR DEBTOR

/S/HAROLD H. MITCHELL, JR.
HAROLD H. MITCHELL, JR.
ATTORNEY FOR PLANTERS BANK & TRUST COMPANY

/S/CHAD J. HAMMONS
CHAD J. HAMMONS
ATTORNEY FOR PINNACLE AGRICULTURE
DISTRIBUTION, INC.

/S/SARAH BETH WILSON
SARAH BETH WILSON
ATTORNEY FOR SOUTHERN BANCORP BANK

/S/LES ALVIS
LES ALVIS
ATTORNEY FOR INDEPENDENT BANK



SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: October 10, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

IN RE STAFFORD E. SHURDEN                    NO. 17-11412-NPO
                                                  CHAPTER 12

AGREED ORDER
RESOLVING OBJECTION TO CONFIRMATION

THIS DAY there came on for consideration by the Court
the objection [Dkt. #32] of Independent Bank to
confirmation of the Debtor's Chapter 12 plan [Dkt. #27]
(the "Plan") and the Debtor's response [Dkt. #42] thereto.
The Court is now advised that the Debtor and Independent
Bank have reached an agreed concerning the matters raised
in said objection and response, that they desire for their

1

**EXHIBIT "A"**

agreement to be incorporated into this Agreed Order and that the Chapter 12 Trustee has no objection thereto. Having considered said agreement, the Court is of the opinion that it should be approved on the terms set out in this Agreed Order, the parties having stipulated as follows:

(1) Debtor is indebted to Independent Bank on a loan evidenced by Independent Bank's proof of claim 12 filed in this case in the amount of $7,305.94, not including Independent Bank's post-petition interest, attorney's fees, and costs and expenses in the amount of $897.50. Independent Bank's claim is secured by a 2010 Ford F150 4x4 crew cab pickup truck (VIN 1FTFW1EV6AFD23017) more particularly described in the proof of claim (the "Truck").

(2) The scheduled value of the Truck is $16,605.00. Independent Bank's claim is oversecured. In view of its oversecured status, Independent Bank is entitled to be paid its post-petition, pre-confirmation interest at the contract rate of 5.79 percent, and its post-petition costs and expenses of collection and attorneys' fees in the

2

amount of $897.50.

IT IS THEREFORE ORDERED AS FOLLOWS:

(A) Independent Bank's proof of claim 12 is hereby allowed as fully secured in the amount of $8,203.44.

(B) Independent Bank's claim shall be and remain secured by its pre-petition security interest in the Truck. Independent Bank shall retain its lien.

(C) Independent Bank's claim shall accrue interest at the contract rate of 5.79 percent per annum from the date of the commencement of this case to the date of confirmation, which equals $1.14 per day. From and after the date of confirmation Independent Bank's claim shall accrue interest at the rate of 5.0 percent per annum.

(D) Independent Bank's claim shall be paid through the Plan as follows: (1) all accrued pre-petition interest in the amount of $95.93, plus all accrued post-petition pre-confirmation interest calculated as provided in Paragraph (C) above, plus all accrued late charges in the amount of $10.00, shall be paid to the Chapter 12 Trustee in time for distribution to Independent Bank in December 2017; and (2)

3

the remaining principal balance of Independent Bank's claim plus its post-petition costs and expenses of collection and attorneys' fees in the amount of $897.50 shall be paid with interest at the rate of 5.0 percent per annum in four equal annual installments of $2,283.73, to be paid to the Chapter 12 Trustee in time for distribution to Independent Bank in December of 2017, 2018, 2019 and 2020.

(E) Debtor shall furnish to Independent Bank on or before October 15, 2017, and thereafter from time to time as reasonably requested by Independent Bank, proof of insurance of the Truck for its full insurable value naming Independent Bank as lienholder and loss payee.

(F) Class Seven of the Plan is hereby modified to incorporate the provisions of this Agreed Order. Any amended plan filed by the Debtor shall treat Independent Bank's claim on the same terms as provided in this Agreed Order and shall incorporate this Agreed Order by reference.

(G) In the event that the Plan has not been confirmed by the end of December 2017, the Debtor shall nevertheless pay to Independent Bank the December 2017 amounts required

4

under Paragraph (D) above as an adequate protection

payment.


## END OF ORDER ##

AGREED AND APPROVED AS TO CONTENT AND FORM:

/s/ Robert Gambrell
ROBERT GAMBRELL
Attorney for Debtor
Bar Number 4409
GAMBRELL & ASSOCIATES, PLLC
101 Ricky D. Britt Blvd., Ste. 3
Oxford, MS 38655
(662) 281-8800
rg@ms-bankruptcy.com

/s/ Les Alvis
LES ALVIS
Attorney for Independent Bank
Bar Number 1548
207 Court Street
Post Office Box 1836
Tupelo, Mississippi 38802-1836
(662) 842-8945
lalvis@rccalaw.com

/s/ Harold J. Barkley, Jr.
HAROLD J. BARKLEY, JR.
Bar Number 2008
Chapter 12 Trustee
Post Office Box 5069
Jackson, MS 39296-5069
(601) 362-7153
hjb@hbarkley13.com

5



SO ORDERED,

*Neil P. Olack*

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: December 6, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## (GREENVILLE)

IN RE:  STAFFORD E. SHURDEN

CASE NO. 17-11412-NPO
CHAPTER 12

### JOINT AGREED ORDER
### RESOLVING OBJECTIONS TO CONFIRMATION

**THIS DAY** there came on for consideration by the Court the objection [Dkt. 62] of Planters

Bank & Trust Company ("Planters Bank") to confirmation of the Debtor's First Amended Chapter

12 Plan [Dkt. 49] ("Plan"), and the Objection [Dkt. 60] of Pinnacle Agriculture Distribution, Inc.

f/k/a Jimmy Sanders, Inc. ("Pinnacle") to the Plan.  The Court is now advised that the Debtor,

Planters Bank, and Pinnacle have reached an agreement concerning the matters raised in said

objections, that they desire for their agreement to be incorporated into this Joint Agreed Order and

that the Chapter 12 Trustee has no objection thereto.  Moreover, Pinnacle seeks clarification from

the Court that confirmation of the amended plan will neither impair nor waive its right or ability to

pursue collection from other entities indebted to it under the terms of various instruments, including

entities in which the Debtor is an owner, officer, manager, or partner.  Having considered said

agreement, the Court is of the opinion that it should be approved on the terms set out in this Joint

Agreed Order, the parties having stipulated as follows:

(1)     Debtor is indebted to Planters Bank on a loan in the amount of $334,542.77.   The

indebtedness to Planters Bank is secured by a first perfected security interest in farm

equipment owned by Stafford Shurden Farms, Inc., a Mississippi corporation

("Corporation"), more particularly described in Exhibit "A" which is attached hereto and

incorporated herein by reference ('farm equipment').

(2)     Debtor shall lease the farm equipment, with the exception of the three (3) truck tractors and

trailers described in Exhibit "A" hereto, from the Corporation at an annual amount of

$39,410.00 due on or before the Trustee's December Disbursement date in each year through

the Chapter 12 Plan until completion of the Plan with the initial payment to be made on or

before the Trustee's Disbursement Date in December 2017.  After completion of the Plan,

lease payments shall continue to be paid in annual installments of $41,600.00 with a final

lease payment being due on or before December 15, 2022.

(3)     The Corporation shall assign the above farm equipment lease payments to Planters Bank and

the Chapter 12 Trustee shall make the annual lease payments direct to Planters Bank through

the Chapter 12 Plan until completion of the Plan.

(4)     Debtor shall surrender the three (3) truck tractors and trailers described in Exhibit "A" hereto

to Planters Bank immediately upon entry of this Joint Agreed Order.

(5)    On Page 2 of 12 of the Plan:

"PARCEL E: This 279 acre parcel of real property is located on Fitzhugh Road, Drew, Mississippi, on which approximately 219 acres is farm land and the remaining land in timber, bayous, etc.  This parcel has a value of approximately $837,000.00."

**shall read**

"PARCEL E: This 279 acre parcel of real property is located on Fitzhugh Road, Drew, Mississippi, on which approximately 219 acres is farm land and the remaining land in timber, bayous, etc.  This parcel has a value of approximately $928,250.00."

**IT IS, THEREFORE, ORDERED** as follows:

(A)    Debtor is indebted to Planters Bank on a loan in the amount of $334,542.77.  The indebtedness to Planters Bank is secured by a first perfected security interest in farm equipment owned by Stafford Shurden Farms, Inc., a Mississippi corporation ("Corporation"), more particularly described in Exhibit "A" which is attached hereto and incorporated herein by reference ('farm equipment").

(B)    Debtor shall lease the farm equipment, with the exception of the three (3) truck tractors and trailers described in Exhibit "A" hereto, from the Corporation at an annual amount of $39,410.00 due on or before the Trustee's December Disbursement date in each year through the Chapter 12 Plan until completion of the Plan with the initial payment to be made on or before the Trustee's Disbursement Date in December 2017.  After completion of the Plan, lease payments shall continue to be paid in annual installments of $41,600.00 with a final lease payment being due on or before December 15, 2022.

(C)   The Corporation shall assign the above farm equipment lease payments to Planters

Bank and the Chapter 12 Trustee shall make the annual lease payments direct to

Planters Bank through the Chapter 12 Plan until completion of the Plan.

(D)   Debtor shall surrender the three (3) truck tractors and trailers described in Exhibit

"A" hereto to Planters Bank immediately upon entry of this Joint Agreed Order.

(E)   Debtor shall furnish to Planters Bank on or before December 15, 2017, and thereafter

from time to time as reasonably requested by Planters Bank, proof of insurance of the

farm equipment for its full insurable value naming Planters Bank as lienholder and

loss payee.

(F)   On Page 2 of 12 of the Plan:

"PARCEL E: This 279 acre parcel of real property is located on
Fitzhugh Road, Drew, Mississippi, on which approximately 219 acres
is farm land and the remaining land in timber, bayous, etc.  This
parcel has a value of approximately $837,000.00."

**shall read**

"PARCEL E: This 279 acre parcel of real property is located on
Fitzhugh Road, Drew, Mississippi, on which approximately 219 acres
is farm land and the remaining land in timber, bayous, etc.  This
parcel has a value of approximately $928,250.00."

(G)   Classes EIGHT and TEN of the Plan and PARCEL E under the heading of Real

Property on Page 2 of 12 of the Plan are hereby modified to incorporate the

provisions of this Joint Agreed Order.

(H)    The right or ability of Pinnacle and Planters Bank to pursue collection from other entities indebted to them under the terms of various instruments, including entities in which the Debtor is an owner, officer, manager, or partner, shall not be impaired or waived in any way by confirmation of the amended plan.

(I)    Nothing in this Joint Agreed Order affects the status of Pinnacle or Planters Bank as unsecured creditors to be paid by Debtor in accordance with the provision in the plan addressing the claims of unsecured creditors.

(J)    Any amended plan filed by the Debtor shall treat the Planters Bank claim and the Pinnacle claim on the same terms as provided in this Joint Agreed Order and shall incorporate this Joint Agreed Order by reference.

**##END OF ORDER##**

**AGREED AND APPROVED AS TO CONTENT AND FORM:**

/s/ Robert Gambrell
**ROBERT GAMBRELL, MSB NO. 4409**
*Attorney for Debtor*
**GAMBRELL & ASSOCIATES, PLLC**
**101 Ricky D. Britt Blvd., Ste. 3**
**Oxford, MS 38655**
**Phone: (662) 281-8800**
**E-Mail: rg@ms-bankruptcy.com**

/s/ Harold H. Mitchell, Jr.
**HAROLD H. MITCHELL, JR., MSB NO. 3368**
*Attorney for Planters Bank & Trust Company*
**CAMPBELL DELONG, LLP**
**923 Washington Avenue (38701)**
**P. O. Box 1856**
**Greenville, MS 38702-1856**
**Phone: (662) 335-6011**
**E-Mail: hmitchell@campbelldelongllp.com**

/s/ Justin B. Jones
**JUSTIN B. JONES, MSB NO. 103295**
**Senior Staff Attorney**
**Chapter 12 Trustee**
**P. O. Box 5069**
**Jackson, MS 39296-5069**
**Phone: (601) 362-7153**
**E-Mail: jjones@hbarkley13.com**

/s/ Andrew S. Harris
**CHAD J. HAMMONS, MSB NO. 10419**
**ANDREW S. HARRIS, MSB NO. 104289**
*Attorneys for Pinnacle Agriculture Distribution, Inc.*
**P. O. Box 427**
**Jackson, MS 39205-0427**
**Phone: (601) 949-4975**
**E-Mail: chammons@joneswalker.com**
**E-Mail: aharris@joneswalker.com**



**DELBERT HOSSMANN**
*Secretary of State*

## UNIFORM COMMERCIAL CODE FILING ACKNOWLEDGEMENT

**Planters Bank & Trust Company**
PO Box 9
Ruleville, MS  38771

File Number: 20141283490A          Filing Date: 8/11/2014 3:43:27 PM
                          Filing Type: UCC1 - Financing Statement
Lapse date: 9/11/2019                Pages: 0

Indexed Debtor(s):

Secured Party(s) / Assignee(s):

Non-Indexed Debtor(s):

Please review the above information that was indexed in our database. We have indexed the above information exactly as it was presented on your enclosed filing. If there is an error please contact our office at the number listed below. If you wish to make a change from your original document an amendment (UCC-3) with the appropriate fee is required. If you are due a refund it will be sent under separate cover.

P.O. Box 136
Jackson, MS 39205
(601) 359-1633

Please refer to the Secretary of State's web page at
www.sos.ms.gov for additional filing information          Tracking: 140076026



**EXHIBIT**
"A"

**14079028**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Alice                    Chandler

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
Planters Bank & Trust Company

PO Box 9

Ruleville        MS        38771
```

File Number: 2014125945QA
Date Filed: 3/11/2014 3:43:27 PM
C. Delbert Hosemann, Jr.
Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
STAFFORD SHURDEN FARMING PARTNERSHIP

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 73 A W SHURDEN RD | DREW | MS | 38737-8555 | US |

2. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME
STAFFORD SHURDEN FARMS INC

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 73 A W SHURDEN RD | DREW | MS | 38737-8555 | US |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)

3a. ORGANIZATION'S NAME
PLANTERS BANK AND TRUST COMPANY

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO BOX 9 | RULEVILLE | MS | 38771-0009 | US |

4. This FINANCING STATEMENT covers the following collateral:

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

File Number: 20141283430A
Date Filed: 3/11/2014 3:43:27 PM
C. Delbert Hosemann, Jr.
Secretary of State

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME
STAFFORD SHURDEN FARMING PARTNERSHIP

| 9b. INDIVIDUAL'S LAST NAME | FIRST GIVEN NAME | DESC'L NAME/SUFFIX |
|---|---|---|
| Shurden | Stafford | E |

9. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (10a or 10b) - do not abbreviate or combine names

10a. ORGANIZATION'S NAME
B & B SHURDEN FARMS INC

| 10b. INDIVIDUAL'S LAST NAME (OR FAMILY NAME OF SURNAME) | FIRST GIVEN NAME | SECOND GIVEN NAME | SUFFIX |
|---|---|---|---|

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 73 A W SHURDEN RD | DREW | MS | 38737-8555 | US |

10d. Check if applicable and check one box ☐ Debtor is a Trust ☐ Debtor is a Trustee acting with respect to property held in trust(s)    ☐ Debtor is a Decedent's Estate

11. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME (OR FAMILY NAME OF SURNAME) | FIRST GIVEN NAME | SECOND GIVEN NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. (if applicable)

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or it is filed as a ☐ fixture filing.

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

International Association of Commercial Administrators (IACA)
UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. DRAFT 05/21/03)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

File Number: 20141283430A
Date Filed: 9/11/2014 3:43:27 PM
C. Delbert Hosemann, Jr.
Secretary of State

| 9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 9a. ORGANIZATION'S NAME | | |
| STAFFORD SHURDEN FARMING PARTNERSHIP | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST GIVEN NAME | MIDDLE INITIAL/SUFFIX |
| Shurden | Stafford | E |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 11. DEBTOR'S EXACT FULL LEGAL NAME | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| 11b. INDIVIDUAL'S LAST NAME | FIRST GIVEN NAME | | MIDDLE NAME | SUFFIX |
| Shurden | Stafford | | E | |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 73 A W SHURDEN RD | DREW | MB | 33737-6855 | US |

| 12. ADDITIONAL SECURED PARTY'S or ASSIGNOR S/P'S NAME | | | | |
|---|---|---|---|---|
| 12a. ORGANIZATION'S NAME | | | | |
| 12b. INDIVIDUAL'S LAST NAME | FIRST GIVEN NAME | | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

17. Additional collateral description:

International Association of Commercial Administrators (IACA)
UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. DRAFT 09/21/00)

General Intangibles: All general intangibles I own in the future including but not limited to, tax refunds, applications or patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

All debtor's accounts, whether now existing or hereafter arising or acquired, whether or not earned by performance; all chattel paper owned by Debtor arising from conversion of accounts, and all accounts hereafter acquired by Debtor, as well as returned or repossessed goods.

All debtor's inventory of every kind, type or description, whether now owned or hereafter acquired, including returned or reposed goods, and any chattel paper or accounts arising from the sale or lease of inventory.

All debtor's farm equipment, whether now owned or hereafter acquired, including any and all accessories, attachments, parts and replacements thereto.

Equipment owned by Stafford Shurden Farms Inc.:

|  |  |  |
|---|---|---|
| 1. | Case IH 8010 Combine | Serial #203137 |
| 2. | Case Corn header | Serial #Y95018397 |
| 3. | Case Draper Header | Serial #Y87N20847 |
| 4. | John Deere 8330 | Serial #RW83300P005205 |
| 5. | John Deere 4760 | Serial #RW4760P003656 |
| 6. | Case IH 7120 Tractor | Serial #JJ80037055 |
| 7. | Three 2800 AC power units | |
| 8. | One JD 329 power unit | Serial #T06329D137686 |
| 9. | Two JD 414 power units with generators | |
| 10. | Four Deutz 6 cylinder power units | |
| 11. | One Deutz 4 cylinder power unit | |
| 12. | Great Plains 2420 grain drill | Serial #FF1111 |
| 13. | Great Plains Air Planter | Serial #GP-B1030R |
| 14. | JD 7100 planter | Serial #a071000A012791 |
| 15. | Two BZ trail seed wagons | Serial #4061 & 3789 |
| 16. | Dickey roller bedder | |
| 17. | Brandt 530 grain cart | Serial #106 |
| 18. | 496 Disk | Serial #847000v042138 |
| 19. | 490 Disk | Serial #047000v022192 |
| 20. | JD 1010 scratcher | |
| 21. | Namco 40 foot land grader | Serial #1266 |
| 22. | Namco dike swiper | Serial #1284 |
| 23. | Dike Plow and seeder | Serial #4TPW-2638 |
| 24. | Gate setter | Serial #AMZ71020 |
| 25. | PTO ditcher | |
| 26. | Two 60' spray booms | |
| 27. | 1000 gallon water dolly | |

| | |
|---|---|
| 28. 84' GMC General with hopper bottom | VIN#1G0T9FYC1BV525746 |
| 29. 91' Kenworth Truck | VIN#1XKDD29X7MJ561396 |
| 30. 94' Mack | VIN #M1AA13Y6RW033961 |
| 31  02' Chevy Silverado | VIN #1GCEK19TS2E281804 |
| 32. 07' GMC Yukon | VIN #1GKFC13027R385882 |
| 33. 07' GMC Seirra | VIN #2GTEK13M071507144 |
| 34. Great Plains TS750 Sprayer | Serial #GG1145 |
| 35. Land Plane | |
| 36. International 146 Crop Maker | Serial #00F0002505 |
| 37. 1000 gallon fuel trailer | |
| 38. Tye Parabolic deep tiller | Serial #HY74525PT |
| 39. JD 1518 cutter | Serial #10082 |
| 40. Case 4391T power unit | Serial #DI90010715 |
| 41. JD Gator ATV | |
| 42. Trimble Autosteer | |
| 43. 36' McFarland Harrow | Serial #10099 |
| 44. Dorsey Hopper Bottom | Serial #1141138 |
| 45. Wilson Hopper Bottom | Serial #STC4939 |
| 46. Turn Road Box Scraper | |
| 47. Kelly Diamond Harrow | Serial #100193 |

Government Payments: All payments, including production flexibility contract payments or benefits, accounts, general intangibles, or other benefits (including, but not limited to payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS, now sometimes known as Farm Service Agency.)

Assignment of 2014 FSA Payments dated 03/11/2014.

Crop Insurance: Assignment of 2014 multiperil crop insurance proceeds and payments resulting from any and all crops grown on lands owned or leased by debtor dated 03/11/2014.

2nd D/T on 279 acres of farmland dated 03/26/2013

*00000004918006886108003112014*

## AGRICULTURAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | | | | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|---|
| $80,000.00 | 03-11-2014 | 03-15-2015 | 4918006886 | | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** STAFFORD SHURDEN FARMING PARTNERSHIP
Stafford E Shurden
73 A W Shurden Road
Drew, MS 38737

**Grantor:** STAFFORD SHURDEN FARMS INC
73 A W Shurden Road
Drew, MS 38737

**Lender:** Planters Bank & Trust Company
Ruleville Branch
P.O. Box 9
Ruleville, MS 38771

THIS AGRICULTURAL SECURITY AGREEMENT dated March 11, 2014, is made and executed among STAFFORD SHURDEN FARMS INC ("Grantor"); STAFFORD SHURDEN FARMING PARTNERSHIP and Stafford E Shurden ("Borrower"); and Planters Bank & Trust Company ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts, General Intangibles, Crops, Farm Equipment and Fixtures

The Collateral includes any and all of Grantor's present and future inventory (including consigned inventory), related equipment, goods, merchandise and other items of personal property, no matter where located, of every type and description, including without limitation any and all of Grantor's present and future raw materials, components, work-in-process, finished items, packing and shipping materials, containers, items held for sale, items held for lease, items for which Grantor is lessor, goods to be furnished under contract for services, materials used or consumed in Grantor's business, whether held by Grantor or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and any and all additions thereto and substitutions or replacements therefor, and all accessories, attachments, and accessions thereto, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement, or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and notes that may be derived from the sale, lease or other disposition of any of the foregoing, and any rights of Grantor to collect or enforce payment thereof, as well as to enforce any guarantees of the foregoing and security therefor, and all of Grantor's present and future general intangibles in any way related or pertaining to the ownership, operation, use, or collection of any of the foregoing, including without limitation Grantor's books, records, files, computer disks and software, and all rights that Grantor may have with regard thereto. Inventory includes inventory temporarily out of Grantor's possession or custody and all returns on accounts, chattel paper and instruments.

The Collateral includes any and all of Grantor's present and future chattel paper, equipment leases, retail installment contracts, notes and chattel mortgages, notes and security agreements, instruments, documents, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Grantor from whatever source arising, and all monies and proceeds payable thereunder, and all of Grantor's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Grantor's present and future rights, title and interest in and with respect to the goods or other property that may give rise to or that may secure any of the foregoing, including without limitation Grantor's insurance rights with regard thereto, and any and all present and future general intangibles of Grantor in any way related or pertaining to any of the foregoing, including without limitation Grantor's account ledgers, books, records, files, computer disks and software, and all rights that Grantor may have with regard thereto.

The Collateral includes any and all of Grantor's present and future accounts, accounts receivable, other receivables, contract rights, instruments, documents, notes, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Grantor from whatever source arising, and all monies and proceeds payable thereunder, and all of Grantor's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Grantor's present and future rights, title and interest in and with respect to the goods, services, and other property that may give rise to or that may secure any of the foregoing, including without limitation Grantor's insurance rights with regard thereto, and all present and future general intangibles of Grantor in any way related or pertaining to any of the foregoing, including without limitation Grantor's account ledgers, books, records, files, computer disks and software, and all rights that Grantor may have with regard thereto.

The Collateral includes all general intangibles, rights in action and causes of action and all other intangible personal property and rights of Grantor of every nature and kind, now owned or hereafter acquired, including without limitation corporate or other business records, inventions, designs, blueprints, plans, specifications, patents, patent applications, trade marks, trade names, trade secrets, goodwill, copyrights, registrations, licenses, franchises, tax refund claims, insurance proceeds, including without limitation insurance covering the lives of key employees on which Grantor is beneficiary, and any letter of credit, guaranty, claim, security interest, or other security held or granted to Grantor to secure payment of any indebtedness.

The Collateral includes any and all of Grantor's present and future rights, title and interest in and to all crops growing or to be planted, cultivated, grown, raised and/or harvested together with any and all agricultural and farm products produced or derived therefrom, of every nature and kind whatsoever, including aquatic goods produced in aquacultural operations, together with all present or future Inventory of Grantor and the products thereof, of every type and description, derived or to be derived therefrom, whether held by Grantor or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and all of Grantor's related equipment, and any and all additions thereto and substitutions and replacements therefor, and all accessories, attachments, and accessions thereto, and all proceeds derived or to be derived therefrom, whether in cash, farm products, or otherwise, and whether from or through any federal or state government agency or program or otherwise, including without limitation all easements, profits, rights of storage, tolling and grazing, and irrigation and water rights; all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, warehouse receipts, chemicals and fertilizers, documents, letters of entitlement, and deficiency, conservation reserve, and diversion and storage payments, all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and notes that may be derived from the sale or other disposition of any of the foregoing, and any rights of Grantor to collect and enforce payment thereof, as well as to enforce any guarantees of the foregoing and security therefor, and all of Grantor's present and future general intangibles in any way relating or pertaining to any of the foregoing, including without limitation Grantor's books, records, files, computer disks and software, and all rights that Grantor may have with regard thereto.

This Collateral includes any and all of Grantor's now owned or hereafter acquired farm equipment or agricultural machinery, equipment, furnishings and fixtures of every type and description, and all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any equipment purchased with the proceeds, and all insurance proceeds and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and notes that may be derived from the sale, lease or other disposition of any of the foregoing, any rights of Grantor to collect or enforce payment thereof as well as to enforce any guaranties of the foregoing and security therefor, and all present and future general intangibles of Grantor in any way related or pertaining to the ownership, operation, or use of the foregoing, any rights of Grantor with regard thereto.

The Collateral includes any and all of Grantor's now owned or hereafter acquired fixtures and other real estate related goods, furnishings and accessories, and all attachments, accessions, substitutions, replacements and additions thereto or therefor, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any fixtures purchased with the proceeds; and all insurance proceeds

and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any buyer, whether due to judgment, settlement or other process, and any and all present and future accounts, chattel paper, instruments, notes and monies that may be derived from the sale, lease or other disposition of any of the foregoing.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to execute financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located. Grantor promptly shall pursue the execution, acknowledgment, and delivery of such subordination, consent, waiver, estoppel, and other agreements as Lender shall require by holders of any encumbrances upon or by owners of such lands where Collateral is or will be located. Grantor consents to Lender's right of access for cultivation of crops upon such terms as Lender may deem satisfactory.

Removal of the Collateral. Except in the ordinary course of Grantor's business, including the sales of Inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Mississippi, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for Inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell Inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

Sale of Collateral. The following provisions relate to any sale, consignment, lease, license, exchange, transfer, or other disposition of crops included as all or a part of the Collateral:

(1)   To induce Lender to extend the credit or other financial accommodations secured by this Agreement, Grantor represents and warrants to Lender that Grantor will sell, consign, lease, license, exchange, or transfer the Collateral only to those persons whose names and addresses have been set forth on sale schedules delivered to Lender. Each schedule shall be in such form as Lender may require, including identification of each type of Collateral.

(2)   Grantor agrees to provide the Lender a written list or schedule of the buyers, commission merchants, and selling agents to or through an individual including the entity name, contact name and address to whom or through whom the crops may be sold, consigned or transferred. All such schedules and notifications shall be in writing and shall be delivered to Lender not less than fourteen (14) days prior to any such sale, consignment or transfer of the crops. Also, the Grantor agrees to provide any update or

amendments to these schedules or lists to the Lender.

(2) All proceeds of any sale, consignment, lease, license, exchange, transfer, or other disposition shall be made immediately available to Lender in a form jointly payable to Grantor and Lender. No provision in this Agreement shall be interpreted to authorize any sale or disposition of Collateral unless authorized by the Lender in writing. All chattel paper, contracts, warehouse receipts, documents, and other evidences of ownership or obligations relating to the Collateral, whether issued by a co-op, grain elevator, warehouse, marketing entity, or bailee, and all accounts and other proceeds of the Collateral shall be immediately assigned and delivered by Grantor to Lender as security for the Indebtedness. At any time before or after the occurrence of an Event of Default, Lender may collect all proceeds of the Collateral without notice to Grantor. All proceeds of the Collateral, when received by Lender, may at Lender's sole discretion be applied to the Indebtedness. Grantor grants Lender a limited power of attorney to sign or endorse Grantor's name on all writings described in this section.

(4) Grantor acknowledges that if the crops are sold, consigned, or transferred to any person not listed on a schedule delivered to Lender as provided above, at least seven (7) days prior to such sale, consignment, or transfer, and if Lender has not received an accounting (including the proceeds) of such sale, consignment or transfer which ten (10) days of the sale, consignment or transfer, then under federal law, Grantor shall be subject to a fine which is the greater of $5,000 or 15% of the value of benefit received from the sale, consignment or transfer to an unlisted buyer, consignee or transferee.

Care and Preservation of the Crops. Grantor shall (1) at reasonable and proper times and in accordance with the best practices of good husbandry attend to and care for the crops and the tillage of the land and do, or cause to be done, any and all acts that may at any time be expedient or necessary to grow, farm, cultivate, irrigate, fertilize, harvest, pick, clean, preserve, and protect the crops; (2) Not commit or suffer to be committed any damage to, destruction of, or waste of the crops; (3) Permit Lender and any of its employees and agents to enter upon the premises where the crops are located at any reasonable time and from time to time for the purpose of examining and inspecting the crops and the premises; (4) Harvest and prepare the crops for market and promptly notify Lender when any of the crops are ready for market; (5) Keep the crops separate and always capable of being identified; and (6) Promptly give Lender written notice of any disease in, any destruction of, any depreciation in the value of, or any damage to the crops.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

Repairs and Maintenance. Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

Inspection of Collateral. Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

Taxes, Assessments and Liens. Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

Compliance with Governmental Requirements. Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

Hazardous Substances. Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

Maintenance of Casualty Insurance. Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. In addition, Grantor shall obtain at its expense any federal or state crop insurance required by Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

Application of Insurance Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

Insurance Reserves. Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

Insurance Reports. Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

Financing Statements. Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs

involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise directed by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness. Grantor agrees to pursue and conduct diligently Grantor's farming, agricultural and other business operations for as long as this Agreement remains in effect. Grantor further agrees that Lender may from time to time enter upon Grantor's premises for the purpose of ascertaining whether Grantor is properly and prudently conducting Grantor's farming, agricultural and other business operations. Grantor shall promptly pay when due all costs and expenses associated with Grantor's farming operations, including without limitation Crops.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Mississippi Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by the Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Care and Possession of the Crops.** Lender may enter upon the premises where any Collateral consisting of crops is located and, using any and all of Grantor's equipment, machinery, tools, farming implements, and supplies, and improvements located on the premises (a) Farm, cultivate, irrigate, fertilize, fumigate, prune, and perform any other act or acts appropriate or necessary to grow, care for, mature, preserve and protect the crops being any water located in, on or adjacent to the premises; (b) Harvest, pick, clean, and remove the crops from the premises and (c) To the extent then permitted under Mississippi law, appraise, store, prepare for public or private sale, exhibit, market and sell the crops and any products of the crops provided that Grantor hereby agrees that if Grantor is the owner of record of the premises upon which the crops and any products of the crops are located, Lender shall not be responsible or liable for returning the premises to their condition immediately preceding the use of the premises as provided herein or for doing such acts as may be necessary to permit future crops to be maintained on the premises.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Case 17-11412-NPO   Doc 70   Filed 12/19/17   Entered 12/19/17 16:40:56   Desc Main
Document   Page 26 of 55

Loan No: 4915008886

AGRICULTURAL SECURITY AGREEMENT
(Continued)

Page 5

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, chores in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Agricultural Security Agreement, as this Agricultural Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Agricultural Security Agreement from time to time.

**Borrower.** The word "Borrower" means STAFFORD SHURDEN FARMING PARTNERSHIP and Stafford B Shurden and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances

relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means STAFFORD SHURDEN FARMS INC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Planters Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means the Note dated March 11, 2014 and executed by STAFFORD SHURDEN FARMING PARTNERSHIP and Stafford S Shurden in the principal amount of $880,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGRICULTURAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 11, 2014.

**GRANTOR:**

By: _____
Stafford S Shurden, President of STAFFORD
SHURDEN FARMS INC

**BORROWER:**

STAFFORD SHURDEN FARMING PARTNERSHIP

STAFFORD SHURDEN FARMS INC., General Partner of STAFFORD SHURDEN FARMING PARTNERSHIP

By: _____
Stafford S Shurden, President of STAFFORD
SHURDEN FARMS INC

B B B SHURDEN FARMS INC., General Partner of STAFFORD SHURDEN FARMING PARTNERSHIP

By: _____
Stafford S Shurden, President of B & B SHURDEN
FARMS INC.

Stafford S Shurden, Individually



SO ORDERED,

**Judge Neil P. Olack**
United States Bankruptcy Judge
Date Signed: December 11, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

STAFFORD E. SHURDEN,                          CASE NO. 17-11412-NPO

DEBTOR                                        CHAPTER 12

### AGREED ORDER RESOLVING SOUTHERN BANCORP BANK'S OBJECTION [DKT. #63] TO CONFIRMATION OF DEBTOR'S FIRST AMENDED CHAPTER 12 PLAN [DKT. #49]

THIS MATTER came before the Court on the *Objection to Confirmation* (Dkt. #63, the "Objection") filed by Southern Bancorp Bank ("Southern Bancorp") to the *First Amended Chapter 12 Plan* (Dkt. # 49, the "Amended Plan") filed by Stafford E. Shurden, the debtor (the "Debtor") in the above-styled chapter 12 bankruptcy case (the

"Bankruptcy Case").[1] The Court, being fully advised in the matter, and being advised that Southern Bancorp, the Debtor, and Harold J. Barkley, the Chapter 12 Trustee herein (the "Trustee") agree to the relief as set forth herein, hereby finds and orders as follows:

1.     On or about March 8, 2017, Southern Bancorp extended a 1-year term commercial loan (herein, the "Crops Loan") to Delta Sky, LLC ("Delta Sky"), an entity owned by and/or in which the Debtor is the sole member and manager. The 2017 Crops Loan was in the original principal amount of $306,116.00.

2.     In connection with the 2017 Crops Loan, the Debtor executed in favor of Southern Bancorp a *Commercial Guaranty* (the "Guaranty") guaranteeing the full and prompt repayment and satisfaction of all indebtedness and obligations owed to Southern Bancorp in connection with the Crops Loan, which includes timely repayment of the full balance of outstanding principal, accrued unpaid interest at the Note rate of six-percent (6%) *per annum*, late charges / fees, attorneys' fees, costs and expenses incurred by Southern Bancorp in connection with the Crops Loan and/or Guaranty, and other costs in accordance with the terms of the agreements between the parties (collectively herein, the Crops Loan and Guaranty "Indebtedness")).[2]

---

[1] Capitalized terms used and not defined herein refer to those set forth in Southern Bancorp's Objection to the Amended Plan and/or its *Objection to Confirmation of Debtor's Chapter 12 Plan of Reorganization* (Dkt. #35, the "Plan #1 Objection").
[2] True and correct copies of the Crops Loan *Promissory Note* and the Debtor's *Commercial Guaranty* executed in connection with same are attached to Southern Bancorp's Plan #1 Objection (Dkt. #35) as Exhibits "1" and "2", respectively. *See also* Southern Bancorp's Plan #1 Objection, Dkt. #35 at pp. 1 - 2 (discussing terms of Crops Loan, the Debtor's personal Guaranty, and the associated collateral security for all of same).

2

3.      Also in connection with the Crops Loan, and as further security for the Indebtedness, the Debtor granted Southern Bancorp a first priority lien on certain of the Debtor's real property covering three (3) tracts of land, including a shop and a shed/warehouse thereon, located at or around 4225 Hwy 49 Drew, Mississippi 38737, Sunflower County (the "Real Property Collateral"), which is referred to by the Debtor in the Amended Plan as Parcel D.

4.      The Crops Loan Indebtedness is also secured by a first priority lien held by Southern Bancorp on all crops (and any and all proceeds therefrom, as further described in the loan documents and security instruments executed by the parties and/or recorded and filed in connection therewith) which are located in or around Sunflower County, Mississippi, (collectively hereinafter, the "Crops / Proceeds," or the Delta Sky "Crops") on certain real property (A) owned by the Debtor, which includes approximately 219.8 acres of farmland, and is referred to by the Debtor in the Amended Plan as Parcel E, (B) owned by Ann Dow Shurden, which includes approximately 382.8 acres, and (C) owned by Reggie Shurden, which includes approximately 462.4 acres.

5.      In connection with the Crops Loan, the Debtor executed a certain Lease Contract with Delta Sky having a term of March 1, 2017, through December 31, 2017, whereby the Debtor leased to Delta Sky the 219.8 acres of farmland within Parcel E on which Delta Sky grows certain of the Crops (herein, the "Shurden / Delta Sky Lease"); a true and correct copy of the Shurden / Delta Sky Lease is attached to Southern Bancorp's Objection in collective Exhibit "1" (Dkt. #63-1 at p. 1).

3

6.      Ann Dow Shurden and Reggie Shurden each also executed Lease Contracts with Delta Sky, whereby they each leased to Delta Sky the above mentioned real property on which Delta Sky grows certain of the Crops (herein collectively, the "Other Leases"); true and correct copies of the Other Leases are also attached to Southern Bancorp's Objection in collective Exhibit "1" (Dkt. #63-1 at p. 2, and p. 3, respectively).

7.      Also in connection with the Crops Loan, the Debtor, Southern Bancorp, and Delta Sky entered into and executed a certain Subordination Agreement dated March 8, 2017 (herein, the "Shurden Subordination Agreement"), whereby the Debtor subordinated all liens on or interests in the 219.8 acres of farmland within Parcel E on which Delta Sky grows Crops (including any such liens or interests arising related to the Shurden / Delta Sky Lease) to Southern Bancorp's liens on and interests in the Delta Sky Crops / Proceeds, effective unless and until the Crops Loan Indebtedness (including as may be or may become owed in connection with all extensions or modifications of same) is paid and satisfied in full; a true and correct copy of the Shurden Subordination Agreement is attached to Southern Bancorp's Objection in collective Exhibit "2" (Dkt. #63-2 at pp. 3-4).[3]

8.      Following filing of the Chapter 12 petition by the Debtor herein, Southern Bancorp continued to make disbursements under the Crops Loan in accordance with

---

[3] Ann Dow Shurden, Delta Sky, and Southern Bancorp also entered into and executed a similar Subordination Agreement covering the real property identified above owned by Ann Dow Shurden and covered by the Lease Contract identified above to which she is a party, a true and correct copy of which is also included within collective Exhibit "2" of Southern Bancorp's Objection (Dkt. #63-2 at pp. 1-2).

4

the terms of the loan documents, and on or about October 6, 2017, Delta Sky and/or the

Debtor, with the agreement of and / or approval from the Chapter 12 Trustee's Office,

used proceeds from sale of certain of Delta Sky's 2017 Crops (Southern Bancorp's

collateral) to pay the balance of Indebtedness outstanding as of that date.[4]

9.      As set forth in the Debtor's Amended Plan, Delta Sky and the Debtor have

expressed their desire to renew the annual 1-year term commercial loan relationship

with Southern Bancorp, subject to and conditioned upon Southern Bancorp's agreement

to same and execution by Delta Sky and the Debtor of documents containing terms and

conditions acceptable to Southern Bancorp, which documents would include, among

other possible things, a promissory note executed by Delta Sky, an unlimited continuing

commercial guarantee executed by the Debtor, and security instruments providing for

the continued first-priority lien on and security interest held by Southern Bancorp in the

Real Property Collateral and the Crops / Proceeds, and may also require, if and when

necessary, executed of renewed or extended lease contract(s) and related subordination

agreements in favor of Southern Bancorp.

10.      To the extent necessary in order to renew, modify, and/or extend the

Crops Loan as contemplated hereinabove, to the extent same may be agreed to between

Southern Bancorp, Delta Sky, the Debtor, and/or any other parties, upon entry of this

Order and any order confirming the Amended Plan the Debtor may proceed

---

[4] Attorneys' fees and costs which have been incurred and will be incurred by Southern
Bancorp from and after that date are part of the Indebtedness, the full repayment and
satisfaction of which continues to be secured by the first-priority lien held by Southern
Bancorp on the Real Property Collateral, by the Guaranty, and by the Crops / Proceeds.

immediately with execution of any and all such documents, including a continuing

personal guaranty and also documents for purposes of continuing, renewing,

modifying, and/or extending Southern Bancorp's existing or prior liens on any and all

Crops Loan collateral identified hereinabove, including without limitation on the Real

Property Collateral, in connection with which Southern Bancorp may proceed with

execution, recording, filing, and/or otherwise for purposes of same.

11.     Southern Bancorp shall retain its first priority liens on the Real Property

Collateral as well as on the Crops / Proceeds, and no Crops / Proceeds shall be used by

the Debtor (to fund payments provided for under the Amended Plan, or otherwise)

unless and until the full balance of Indebtedness owed from time to time in connection

with the Crops Loan (as same may be extended, renewed, and/or modified from time

to time) and the Debtor's Guaranty of same has been paid and satisfied to Southern

Bancorp in full.

12.     For the full term of the Plan, the Debtor shall comply with all terms of any

and all documents executed by the Debtor in connection with the Crops Loan, as same

may be renewed, modified, and/or extended from time to time, including without

limitation the obligations to provide for continuing and uninterrupted maintenance of

insurance and payment and satisfaction of all *ad valorem* taxes with respect to all Real

Property Collateral / Parcel D, and all real property on which Delta Sky Crops are

located / Parcel E, as same shall become due, and the Debtor's real property on which

the Crops / Proceeds (property of Delta Sky) are located, and shall further provide

evidence of same to Southern Bancorp as may be reasonably requested by Southern Bancorp from time to time.

13.    In addition to the executory contracts and / or leases identified by the Debtor in the Amended Plan, which the Debtor intends to assume, the Debtor shall also assume: (A) the Shurden / Delta Sky Lease; and (B) the Shurden Subordination Agreement, as each of same may be modified, renewed, and/or extended from time to time.

14.    Further, to the extent of any interest, right, or claim which the Debtor may have as to same, the Debtor intends to also assume the Other Leases and subordination agreements related to the real property on which Delta Sky Crops are grown, as each of same may be modified, renewed, and/or extended from time to time.

15.    Southern Bancorp's rights, claims, and interests with regard to the Crops Loan, any and all agreements with third-parties entered into in connection with same from time to time (including as to non-debtor Delta Sky), and any and all collateral security for same pledged by any party from time to time, shall be unaltered and unaffected by this Bankruptcy Case, including any and all confirmation orders which may be entered herein, and rather shall be altered only to the specific extent set forth by the terms of any such confirmation order as supplemented by this Order and in any event only in accordance with applicable bankruptcy law.

16.    To the extent that the terms of the Amended Plan and/or any order entered confirming same conflict with the terms of this Order, this Order shall take precedence and the terms set forth herein shall govern.

7

17.    The terms of this Order shall become final and effective immediately, and this Order constitutes a final judgment as contemplated by the Federal Rules of Bankruptcy Procedure.

**##END OF ORDER##**

**PREPARED AND SUBMITTED BY:**

/s/ Sarah Beth Wilson
William H. Leech, MSB No. 1175
Sarah Beth Wilson, MSB No. 103650
Christopher H. Meredith, MSB No. 103656
Copeland, Cook, Taylor & Bush, P.A.
P.O. Box 6020
Ridgeland, MS 39158
Phone: (601) 856-7200
Fax: (601) 856-7626
bleech@cctb.com
sbwilson@cctb.com
cmeredith@cctb.com
*Counsel for Southern Bancorp Bank*

**AGREED TO AND APPROVED BY:**

/s/ Robert Gambrell
Robert Gambrell, MSB No. 4409
Gambrell & Associates, PLLC
101 Ricky D. Britt Blvd., Ste. 3
Oxford, MS 38655
662-281-8800 - Telephone
662-202-1004 - Facsimile
rg@ms-bankruptcy.com
*Counsel for the Debtor*

/s/ Justin B. Jones
Harold J. Barkley, Jr.
Justin B. Jones
hjb@hbarkley13.com
jjones@hbarkley13.com
*Chapter 12 Trustee*

8

## Payment Schedule of Stafford E Shurden (17-11412-NPO)

| | |
|---|---|
| December 1, 2017 | $145,143.03 |
| December 1, 2018 | $145,143.03 |
| December 1, 2019 | $145,143.03 |
| December 1, 2020 | $145,143.03 |

## Calculation of payment

Independent Bank - $2,283.73 (annual)
IRS - $750.00 (annual) (Estimated)
Ms. Dept of Revenue - $125.00 (annual) (Estimated)
Ms. Land Bank - $34,150.00 (annual)
Planters Bank - $4,800.00 (annual)
Planters Bank - $37,000.00 (annual)
Planters Bank - $39,410.00 (annual)
TD Auto - $4,200.00 (annual)
US Bank - $2,910.00 (annual)
Unsecured creditors - $5,000.00 (annual)
Trustee Fee - $14,514.30 (annual)

**EXHIBIT "B"**

# FIRST AMENDED CHAPTER 12 PLAN
## OFFER OF ADEQUATE PROTECTION
## LIQUIDATION ANALYSIS

**CASE NO. 17-11412 NPO**

**Debtor:**   **STAFFORD E. SHURDEN**                    SS #  xxx-xx-0085

Address :   P.O. Box 27, Drew, MS 38737

EARNINGS:

Farming — 2017 to Pet Date $   40,000.00          Other          $ 58,950.00

Farming — 2016          $   393,864.00          Other          $172,515.70
                                                Source          Not applicable

## TREATMENT OF CREDITORS

**PRIORITY CREDITORS – 11 U.S.C. § 1222(a)(2)**

IRS    $     3,000.00    Payable at $          per: Year

STATE  $      500.00    Payable at $          per: Year

OTHER  $   See Class 2    Payable at $          per: MO  QTR S/A  A

TOTAL PRIORITY DEBTS (APPROX.): 3,500.00

    Since the Debtor has not completed his 2016 tax returns, the amount owed to the IRS and the MDOR is estimated. The priority claims will be paid in four annual installments commencing with the first annual payment on the Trustee's December disbursement date in December, 2017, with three additional annual installments on or before the Trustee's December disbursement date each year.

**DOMESTIC SUPPORT OBLIGATIONS (POST PETITION) DUE TO:** NONE (N/A)

**PRE-PETITION DOMESTIC SUPPORT ARREARAGE CLAIMS DUE TO:** NONE (N/A)

Page 1 of 12

**EXHIBIT "C"**

**SECURED CREDITORS (Retain lien under 11 U.S.C. § 1225 (a)(5)(B)(i))**

**Real Property:** The Debtor has an interest in multiple parcels of real property, which are listed below and identified as Parcel A, Parcel B, etc:

**Parcel A:** This parcel of real property is Debtor's homestead and principal residence and is located at 73 AW Shurden Road, Drew, Mississippi 38737, together with the Debtor's home, which has a value of approximately $139,125.00. Debtor owns the property as a joint tenant with his wife, resulting in his interest being 50% of the total value and any equity in the property.

**Parcel B:** This parcel of real property is located at 117 and 119 North Main Street and 300 S. Third Street, Drew, Mississippi 38737. There are two buildings on the Main Street property, one of which holds the restaurant that is used for storage by the Debtor and his LLCs. The structure on 300 S. Third Street is a rental house. The Debtor estimates that the value of both parcels combined is $67,000.00.

**Parcel C:** This parcel of real property is consisting approximately 1 acre parcel together with 6 grain bins and has a value of approximately $100,000.00.

**Parcel D:** This parcel of real property is located on Hwy 49, Drew, Mississippi which consists of 2.7 acres together with a shop and a shed/warehouse. The property has a value of approximately $53.0000.00.

**Parcel E:** This 279 acre parcel of real property is located on Fitzugh Road, Drew, Mississippi, on which approximately 219 acres is farm land and the remaining land in timber, bayous, etc. This parcel has a value of approximately $837,000.00.

**Adjustment of interest on secured claims with this provision:** For the treatment of each claim that proposes to have an adjustment of the interest rate in the future, the rate shall be determined using the Wall Street Journal Prime Rate ("WSJP Rate") in effect on the adjustment date together with the risk factor given to the each claim. If the rate changes on the adjustment date, the annual installments due under the terms of the plan shall be adjusted by amortizing the loan over the same period in which the loan or claim would be paid at the rate provided for in the plan and the annual payment that is being paid according to the terms of the Plan. For example a loan that will pay off in 20 years from the adjustment date with the monthly payment based upon the original interest rate and annual payment with the loan or claim being amortized over the same 20 years at the adjusted rate.

**Preparation of additional loan documents:** Each claim holder shall have the right to prepare additional loan documents, if deemed necessary by the claim holder, provided the new documents comply with the terms of the Confirmed Chapter 12 Plan. Debtor shall promptly sign any required documents needed by the claim holders that elect to prepare new loan documents pursuant to this provision of the Plan.

**CLASS ONE:**        **Planters Bank and Trust Company ("Planters Bank")** holds a secured claim which are secured by real property, which consists of real property which is the Debtor's principal residence, Parcel A. The amount owed on the claim is approximately $65,598.37 which is secured by Parcel A and is further identified as proof of claim (Clm. #8). This claim is fully secured by Debtor's homestead.

**TREATMENT:**        Per 11 U.S.C. § 1322(b), this claim will not be modified and is to be paid outside the Chapter 12 Plan according to its terms.

**CLASS TWO:**        The **Mississippi Land Bank ("MS Land Bank")** The Mississippi Land Bank ("MS Land Bank") holds a claim identified by proof of claim (Clm. #1) which is secured by a first deed of trust on Parcel C and Parcel E in the amount of $476,173.65, bearing interest at the rate of 5.5% per annum as of the Petition Date (the "MS Land Bank Allowed Secured Claim"). The MS Land Bank Allowed Secured Claim shall continue to bear interest at the applicable contract rate until the date of confirmation of the Chapter 12 Plan (the "Confirmation Date"). The MS Land Bank Allowed Secured Claim as of the Confirmation Date shall also include any reasonable and necessary expenses, including but not limited to post petition attorney's fees. Debtor estimates that the MS Land Bank Allowed Secured Claim will be approximately $500,000.00 on the Confirmation Date, but the actual amount of the MS Land Bank Allowed Secured Claim will be determined as of the Confirmation Date and will be supplied to the Chapter 12 Trustee ("Trustee") by MS Land Bank, and said amount shall control unless Debtor objects to the amount and the Court rules otherwise. As necessary, the annual payments set forth below may be adjusted upward or downward by the Trustee to facilitate the payment of the MS Land Bank Allowed Secured Claim as provided herein.

**TREATMENT:**        Upon confirmation of the Chapter 12 Plan and in full satisfaction of the debt owed to MS Land Bank, the Debtor will pay the MS Land Bank Allowed Secured Claim in the amount determined as of the Confirmation Date, in annual installments and the MS Land Bank Allowed Secured Claim will bear interest at the rate of 5.0% per annum which shall be calculated in the same manner as prescribed in the promissory note between the parties. The initial payment will be made on or before the Trustee's Disbursement Date in December, 2017 in the amount of $34,150.00, with three (3) additional annual installments in the same amount continuing on or before the Trustee's Disbursement Date in December of each year thereafter (2018, 2019 and 2020). Upon completion of the term of the Plan, the annual installment shall thereafter increase to $36,000.00 which shall be paid on or before December 15, of each year following the Debtor's completion of the plan payments contemplated herein for an additional 15 years. Thereafter,

Page 3 of 12

any remainder of MS Land Bank's Allowed Secured Claim shall be paid in full with a final balloon payment including all principal, interest and reasonable and necessary costs incurred by MS Land Bank on or before December 15, 2036. Thus, the treatment of MS Land Bank's Allowed Secured Claim is based upon an amortization period of approximately 27 years with an interest rate of 5% per annum from and after the Confirmation Date, with a balloon payment due in approximately twenty (20) years from the Confirmation Date, December 15, 2036

If an order is entered by this Court, modifying these terms, the provision of the order shall control the treatment of this claim..

MS Land Bank is given the authority to prepare new loan documents as described above.

**CLASS THREE:**       **Planters Bank** holds a claim which is secured by parcel B, securing the sum of $32,559.24 and also secures the unsecured portion of other loans made by Planters Bank through the cross-collateralization clauses thereon. Thus, Planters Bank's claim secured by Parcel B is an undersecured claim in the amount of $67,000.00, which is the value of said parcels.

**TREATMENT:**       Upon confirmation of the Chapter 12 Plan and in full satisfaction of the debt, the Debtor will pay to the Planters Bank Allowed Secured Claim in the amount of $67,000.00, in annual installments and the claim will bear interest at the rate of 5.0% per annum which shall be calculated in the same manner as prescribed in the promissory note between the parties. The initial payment will be on or before the Trustee's Disbursement Date in December, 2017 in the amount of $4,800.00, with annual installments continuing on or before the Trustee's Disbursement Date in December of each year thereafter. Upon completion of the term of the Plan, the annual installment shall increase to $5,000.00 and the annual payment shall be paid on or before December 15, of each year.

The interest rate shall be adjusted on December 15, 2021 with the new rate being determined by the WSJP Rate plus a risk factor of 1.0% for an additional five years with a floor of 5.0% and a cap of 7.0%. The claim shall have a balloon payment, in which all remaining principal and interest due on the claim shall be paid in full on or before December 26, 2026.

Planters Bank  is given the authority to prepare new loan documents as described above.

**CLASS FOUR:**      **Planters Bank** holds a claim which is secured by Parcel E, securing the sum of $615,817.60 bearing interest at the rate of 6.50% as of the Petition Date. The claim is secured by the equity in Parcel E, which was $541,326.65 as of the Petition Date; thus Planters holds an Allowed Secured Claim in the amount of $541,326.65 as an undersecured claim. The remaining portion of the Claim shall be treated as a general unsecured claim.

**TREATMENT:**      Upon confirmation of the Chapter 12 Plan and in full satisfaction of the debt, the Debtor will pay to the Planters Bank Allowed Secured Claim in the amount of $541,326.65, in annual installments and the claim will bear interest at the rate of 5.0% per annum which shall be calculated in the same manner as prescribed in the promissory note between the parties. The initial payment will be on or before the Trustee's Disbursement Date in December, 2017 in the amount of $37,000.00, with annual installments continuing on or before the Trustee's Disbursement Date in December of each year thereafter. Upon completion of the term of the Plan, the annual installment shall increase to $40,500.00 and the annual payment shall be paid on or before December 15, of each year.

     The interest rate shall be adjusted on December 15, 2021 with the new rate being determined by the WSJP Rate plus a risk factor of 1.0% for an additional five years with a floor of 5.0% and a cap of 7.0%. The claim shall have a balloon payment, in which all remaining principal and interest due on the claim shall be paid in full on or before December 26, 2026.

     Planters Bank is given the authority to prepare new loan documents as described above.

## MACHINERY, EQUIPMENT, ROLLING STOCK AND VEHICLES (attach list, if necessary)

**CLASS FIVE:**      **TD Auto Finance ("TD Auto")** holds a claim in the approximate amount of $18,029.13 as of the Petition Date. The value of the collateral, a 2014 Chevrolet Silverado is $18,180.00. As an oversecured claim, TD Auto is entitled to additional pre-confirmation interest, but the claim cannot exceed the value of $18,180.00. As a result, TD Auto is entitled to an allowed secured claim in the amount of $18,180.00.

**TREATMENT:**      In full satisfaction of the claim, the Allowed Secured Claim in the amount of $18,180.00 shall bear interest at the rate of 5.0% per annum from the date of confirmation, shall be amortized over a period of 5 years. The initial payment

will be on or before the Trustee's Disbursement Date in December, 2017. The claim shall be paid through annual installments of $4,200.00 due on or before the Trustee's December Disbursement date in each year through the Chapter 12 Plan until completion of the Plan. If any balance is unpaid amount remaining after completion of the Plan shall continue to be paid in annual installments of $4,200.00 until the claim is satisfied with the final payment of principal and interest due on or before December 15, 2021.

Upon payment of the claims in accordance with Section 1225(a)(5) of the Bankruptcy Code, unless otherwise ordered by the Court, the creditors shall release their liens and otherwise comply with applicable non-bankruptcy law.

**CLASS SIX:**      U.S. Bank National Association ("US Bank") holds a claim in the amount of $12,179.41 as of the Petition Date. The value of the collateral, a 2013 Chevrolet Suburban is $30,150.00. As a result, US Bank is entitled to an allowed secured claim postpetition, pre-confirmation interest at the contract rate. Thus, the estimated claim as of confirmation is in the amount of $12,575.00.

**TREATMENT:**      In full satisfaction of the claim, the Allowed Secured Claim shall bear interest at the rate of 5.0% per annum from the date of confirmation, shall be amortized over a period of 5 years. The initial payment will be on or before the Trustee's Disbursement Date in December, 2017. The claim shall be paid through annual installments of $2,910.00 due on or before the Trustee's December Disbursement date in each year through the Chapter 12 Plan until completion of the Plan. If any balance is unpaid amount remaining after completion of the Plan shall continue to be paid in annual installments of $4,200.00 until the claim is satisfied with the final payment of principal and interest due on or before December 15, 2021.

Upon payment of the claims in accordance with Section 1225(a)(5) of the Bankruptcy Code, unless otherwise ordered by the Court, the creditors shall release their liens and otherwise comply with applicable non-bankruptcy law.

**CLASS SEVEN:**      **Independent Bank** an allowed fully-secured claim in the amount of $8,203.44, secured by a 2010 Ford F150 4x4 crew cab pickup truck, all as more particularly provided in the Agreed Order Resolving Objection to Confirmation (Dkt. #48) entered by the Court on October 10, 2017 (the "Independent Bank Order"), which is attached hereto as Exhibit "A" and incorporated herein by reference.

TREATMENT:     In full satisfaction of the claim, Independent Bank's claim shall be paid according to the terms and conditions set forth in the Independent Bank Order.

Upon payment of the claims in accordance with Section 1225(a)(5) of the Bankruptcy Code, unless otherwise ordered by the Court, the creditors shall release their liens and otherwise comply with applicable non-bankruptcy law.

**CLASS EIGHT:**     **Either Planters Bank or Pinnacle Agriculture Distribution, Inc. ("Pinnacle Ag")** hold a claim which is secured by any and all farm equipment owned by Debtor except the three 18 wheelers, and said equipment has a value of $200,000.00, which will be the Allowed Secured Claim of Planters Bank or the Allowed Secured Claim of Pinnacle Ag. The Planters Bank claim (Clm. #7) is in the total amount of $334,542.77 and the Pinnacle Ag claim (Clm. #14) is in the total amount of $271,047.08. Since there is a dispute as to which creditor holds the lien on the aforesaid equipment, the provisions for payment of the claim are set forth below, and those provisions will apply to either Planters Bank or Pinnacle Ag after the Court rules on which claim has priority over the other.

TREATMENT:     In full satisfaction of the claim, the Allowed Secured Claim of either Planters Bank or Pinnacle Ag in the amount of $200,000.00 shall bear interest at the rate of 5.0% per annum from the date of confirmation, The initial payment will be on or before the Trustee's Disbursement Date in December, 2017. · If the Court has not ruled on which creditor holds the first lien on the equipment, the Trustee shall hold the payment made on this claim until the Court makes its ruling. The claim, which will be amortized over six years, shall be paid through annual installments of $39,410.00 due on or before the Trustee's December Disbursement date in each year through the Chapter 12 Plan until completion of the Plan. If any balance is unpaid after completion of the Plan, payments shall continue to be paid in annual installments of $41,600.00 until the claim is satisfied with the final payment of principal and interest due on or before December 15, 2022.

The balance of the Planters Bank claim and the Pinnacle Ag claim not paid as secured pursuant to the terms related to this Class will be treated as a general unsecured claim unless all or a portion of the claims are paid as a part of Class Ten.

Should Planters Bank and Pinnacle Ag be unable to reach an agreement and submit an agreed order determining which creditor holds the secured claim or determining the amount each party is entitled to hold as its secured claim on or before the confirmation hearing on this Plan. Debtor will file an adversary

**Page 7 of 12**

proceeding to determine the priority, extent and validity of the Planters Band lien and the Pinnacle Ag lien within 7 days of the scheduled confirmation hearing. The trustee shall hold the funds paid to cover the Class Eight claim until the Court makes its ruling in the adversary proceeding.

Upon payment of the claims in accordance with Section 1225(a)(5) of the Bankruptcy Code, unless otherwise ordered by the Court, the creditors shall release their liens and otherwise comply with applicable non-bankruptcy law.

**CLASS NINE:**          **Southern Bancorp Bank ("Southern Bancorp")** held a claim (as of the petition date) secured by first deed of trust on Parcel D and by a first lien on the 2017 crop and all related crop, including proceeds from the sale of the crop, any government subsidies and/or any proceeds received from claims against crop insurance. Subsequent to the petition date, Southern Bancorp has continued to disburse proceeds from the crop loan to Debtor and Delta Sky, PLLC (treated as a sole proprietorship by the IRS). The claim consists of both a pre-petition claim and post-petition claims as disbursements have continued in the ordinary course of business.

**TREATMENT:**          The claim shall be paid in full, including all accrued interest at the contract rate of interest and any costs or fees, including but not limited to attorney's fees incurred in this proceeding, from the proceeds of the sale of Debtor's 2017 crop and any proceeds received from government subsidies or farm grants and proceeds from crop insurance. Southern Bancorp will continue to be paid in full in subsequent years for the crop loans and disbursements made in those years, provided Southern Bancorp, the Debtor and Delta Sky all agree to continue in this relationship; and in that event, Southern Bancorp will continue to be secured by Parcel D and the proceeds from the sale of the crops grown in subsequent years together with government subsidies and crop insurance proceeds, and Southern Bancorp, the Debtor and Delta Sky shall have to authority to execute any and all necessary documents to ensure that Southern Bancorp is properly secured for the future loans and disbursements. Should an order be entered modifying any terms of the treatment of Southern Bancorp, the terms of the order shall control the treatment of this claim.

**CLASS TEN:**          **Either Planters Bank or Pinnacle Ag** hold claims as identified under Class Eight and this Class. From the portion of those claims that remain a part of the unsecured class, the creditor which is subordinate to the other in Class Eight as determined by this Court will be paid the proceeds from the sale of the three tractor rigs and trailers. The Debtor and Stafford Shurden Farming Partnership will either surrender the trailers to the entity that is entitled to receive the funds from the sale or the Debtor will make some needed repairs at his expense and will sell the equipment with the creditor's agreement will sell the tractor rigs and trailers and pay all proceeds of the sale to either Planters Bank or Pinnacle

Ag.  The determination as to which party is entitled to the equipment and/or the proceeds of the sale will be made based upon the Court's ruling on the party that holds the first lien for the Class Eight Claim.

All proceeds that remain unpaid to Planters Bank and Pinnacle Ag that remain unpaid after the application of the secured claim in Class Eight and payment of the funds from the sale of the tractor rigs and trailers in this Class shall be treated as allowed general unsecured claims.

SPECIAL CLAIMANTS (co-signed debts, collateral for abandonment, etc.): ON ABANDONED COLLATERAL, DEBTOR TO PAY ZERO ON SECURED PORTION OF DEBT.  Where proposal is for payment, creditor must file a proof of claim to receive proposed payment.

**There are no special claimants.**

UNSECURED CREDITORS:

To receive no less than they would receive if this was a liquidation under Chapter 7 of the Bankruptcy Code and pursuant to 11 U.S.C. 1225 (b)(i)(A)(B) & (C)

The holders of allowed unsecured claims are to be paid in deferred payments as follows:

All allowed general unsecured claims shall be paid each claim's pro-rata share of the sum of $20,000.00 which shall be paid in increments of $5,000.00 annually, each year during the course of the plan which provides for four annual installments in just over three years from the Confirmation Date.  The Debtors further proposes to pay any additional disposable income above this amount that they may have during the first three 3 years of the chapter 12 plan to unsecured creditors.

LIQUIDATION ANALYSIS

The only parcel of real property owned by the Debtor that does not have liens thereon that exceed the value of the parcel is the Debtor's Homestead (Parcel A).  The value of the parcel ($139,125.00) less the Planter's Bank lien in the amount of $65,598.37 leaves a total equity in the amount of $73,526.63 and ½ of that equity is $36,763.32.  Although Debtor only claimed $37,500.00 as exempt, he actually can claim the entire $75,000.00 as exempt if his wife has no need to claim her ½ interest as exempt.

The farm equipment is also completely encumbered by the Planters Bank loan and the PERS and whole life insurance policy cash value are completely exempt.  Thus, the only equity the Debtor has is the equity in the vehicles and personal property other than the farm equipment.  The values, liens and exemptions are as follows:

**VALUES:**

| | |
|---|---|
| 2013 Chevy Suburban | $ 30,015.00 |
| 2010 Ford F150 | 16,505.00 |
| 2014 Silverado | 18,180.00 |
| 2011 Chevy Malibu | 1,200.00 |
| 50% interest in HHG | 1,250.00 |
| 50% interest in electronics | 410.00 |
| 50% interest in collectables | 500.00 |
| 50% interest in children's hobby items | 125.00 |
| hobby equipment and firearms | 1,035.00 |
| jewelry | 500.00 |
| medical items | 25.00 |
| cash | 200.00 |
| ½ interest in value of Main St. Deli | 1,250.00 |
| | |
| Value before liens, exemptions, etc. | $ 71,195.00 |
| | |
| Exemptions claimed: | 10,250.00 |
| | |
| Liens on autos: | 37,514.49 |
| | |
| Net after liens & exemptions: | 23,430.51 |
| | |
| Ch 7 Trustee's fees: | 6,297.25 |
| Ch 7 Estimated Admin Expenses: | 3,000.00 |
| Payment of priority claims: | 3,500.00 |

**Net to allowed general unsecured claims:    $   10,633.26**

Any lien which may be avoided pursuant to 11 U.S.C. § 522(f) shall be avoided for the benefit of the Debtor.  Liens to be avoided: <u>The Debtor does not believe that any of the liens are avoidable under § 522(f).  If the value of the claim on farm equipment is contested, the Debtor reserves the right to raise the ability to avoid the lien on equipment up to the maximum allowed under § 522(f).</u>

**INSURANCE:** House, real estate, improvements, machinery, equipment, rolling stock, and vehicle insurance is not presently in force, but will be insured by the company named below:

COMPANY:  <u>Farm Bureau Insurance Company</u>

**ADMINISTRATIVE:** Filing fee, administrative fees, and future attorney fees to be paid pursuant to Court Order; Debtor paid a retainer of $10,000.00 against which attorney fees at the rate of $250.00 per hour, paralegal fees at the rate of $85.00 per hour, and expenses shall be paid upon application to, and approval by, the Court.

## ADEQUATE PROTECTION: N/A

Debtor will timely file application for use of any cash collateral, prior to use of same, and obtain Court Order for use of cash collateral. Debtor expects to request use of $ N/A cash collateral which is subject to lien of N/A

Debtor will file monthly income and expense statements of all income and money received, expenses paid and debt incurred by the Debtor for each month after the filing of the petition by filing the original with the Clerk, and a copy sent to the Trustee and a copy to each creditor requesting same.

Debtor will prepare and deliver to the Trustee, no less than 15 days prior to the due date and accompanied by any post-petition taxes due, a state and local tax return during the pendency of this case.

## EXECUTORY CONTRACTS AND LEASES:

Debtor accepts and assumes the following unexpired leases pursuant to 11 U.S.C. § 365 and is not a party to any other types of executory contracts..

**LEASE #1:** That certain lease of 382.8 acres together with three 20 thousand bushel grain bins; as set forth on Exhibit "B" attached hereto. Debtor and Lessor, Ann Dow Shurden have agreed to extend the lease contract at a similar rate for each year during the term of the plan as Debtor has leased the land at $45,000.00 per year to the current rate of $50,000.00 per year since 2000.

**LEASE #2:** That certain lease of 462.4 acres together with three 20 thousand bushel grain bins; as set forth on Exhibit "C" attached hereto. Debtor and Lessor, Reggie Shurden have agreed to extend the lease contract at a similar rate for each year during the term of the plan as Debtor has leased the land at $45,000.00 per year to the current rate of $50,000.00 per year since 2000.

Debtor agrees to pay the lease payments from proceeds from of crops, farm subsidies and any payments from crop insurance in December of each year.

Debtor requests that the Court approve this plan for four (4) years.

## PLAN PAYMENT

The Plan payment of the Debtor shall be made to the Trustee in the amount of $145,384.00 annually with the first payment due on or before December 15, 2017 and three additional annual following payments due on December 15th with the final payment being due on December 15, 2020.  Should the Debtor be able to pay the annual payment prior to the disbursement date for an earlier month, the annual payment to claims as provided under the terms of the Plan shall be paid on Trustee's disbursement date following the annual payment.

Creditors not paid out during the life of the Plan will be paid directly with the funds as set forth in the Plan, after said Plan is completed and the discharge is granted.

Plan payments are to be made from Debtor's future farming income, which Debtor anticipates will be sufficient to fund the Plan.

DATED:  October 12, 2017

STAFFORD E. SHURDEN, Debtor

By:  /s/ Robert Gambrell _____
ROBERT GAMBRELL; Atty for Debtor;
MSB #4409
GAMBRELL & ASSOCIATES, PLLC
101 Ricky D. Britt Blvd., Ste. 3
Oxford, MS 38655
Ph: (662)281-8800 / Fax: (662)202-1004
rg@ms-bankruptcy.com



SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: October 10, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

Exhibit "A"

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

IN RE STAFFORD E. SHURDEN                    NO. 17-11412-NPO
                                             CHAPTER 12

AGREED ORDER
RESOLVING OBJECTION TO CONFIRMATION

THIS DAY there came on for consideration by the Court
the objection [Dkt. #32] of Independent Bank to
confirmation of the Debtor's Chapter 12 plan [Dkt. #27]
(the "Plan") and the Debtor's response [Dkt. #42] thereto.
The Court is now advised that the Debtor and Independent
Bank have reached an agreed concerning the matters raised
in said objection and response, that they desire for their

1

agreement to be incorporated into this Agreed Order and that the Chapter 12 Trustee has no objection thereto. Having considered said agreement, the Court is of the opinion that it should be approved on the terms set out in this Agreed Order, the parties having stipulated as follows:

(1) Debtor is indebted to Independent Bank on a loan evidenced by Independent Bank's proof of claim 12 filed in this case in the amount of $7,305.94, not including Independent Bank's post-petition interest, attorney's fees, and costs and expenses in the amount of $897.50. Independent Bank's claim is secured by a 2010 Ford F150 4x4 crew cab pickup truck (VIN 1FTFW1EV6AFD23017) more particularly described in the proof of claim (the "Truck").

(2) The scheduled value of the Truck is $16,605.00. Independent Bank's claim is oversecured. In view of its oversecured status, Independent Bank is entitled to be paid its post-petition, pre-confirmation interest at the contract rate of 5.79 percent, and its post-petition costs and expenses of collection and attorneys' fees in the

2

amount of $897.50.

IT IS THEREFORE ORDERED AS FOLLOWS:

(A) Independent Bank's proof of claim 12 is hereby allowed as fully secured in the amount of $8,203.44.

(B) Independent Bank's claim shall be and remain secured by its pre-petition security interest in the Truck. Independent Bank shall retain its lien.

(C) Independent Bank's claim shall accrue interest at the contract rate of 5.79 percent per annum from the date of the commencement of this case to the date of confirmation, which equals $1.14 per day. From and after the date of confirmation Independent Bank's claim shall accrue interest at the rate of 5.0 percent per annum.

(D) Independent Bank's claim shall be paid through the Plan as follows: (1) all accrued pre-petition interest in the amount of $95.93, plus all accrued post-petition pre-confirmation interest calculated as provided in Paragraph (C) above, plus all accrued late charges in the amount of $10.00, shall be paid to the Chapter 12 Trustee in time for distribution to Independent Bank in December 2017; and (2)

3

the remaining principal balance of Independent Bank's claim plus its post-petition costs and expenses of collection and attorneys' fees in the amount of $897.50 shall be paid with interest at the rate of 5.0 percent per annum in four equal annual installments of $2,283.73, to be paid to the Chapter 12 Trustee in time for distribution to Independent Bank in December of 2017, 2018, 2019 and 2020.

(E) Debtor shall furnish to Independent Bank on or before October 15, 2017, and thereafter from time to time as reasonably requested by Independent Bank, proof of insurance of the Truck for its full insurable value naming Independent Bank as lienholder and loss payee.

(F) Class Seven of the Plan is hereby modified to incorporate the provisions of this Agreed Order. Any amended plan filed by the Debtor shall treat Independent Bank's claim on the same terms as provided in this Agreed Order and shall incorporate this Agreed Order by reference.

(G) In the event that the Plan has not been confirmed by the end of December 2017, the Debtor shall nevertheless pay to Independent Bank the December 2017 amounts required

under Paragraph (D) above as an adequate protection payment.

## END OF ORDER ##

AGREED AND APPROVED AS TO CONTENT AND FORM:

/s/ Robert Gambrell
ROBERT GAMBRELL
Attorney for Debtor
Bar Number 4409
GAMBRELL & ASSOCIATES, PLLC
101 Ricky D. Britt Blvd., Ste. 3
Oxford, MS 38655
(662) 281-8800
rg@ms-bankruptcy.com

/s/ Les Alvis
LES ALVIS
Attorney for Independent Bank
Bar Number 1548
207 Court Street
Post Office Box 1836
Tupelo, Mississippi 38802-1836
(662) 842-8945
lalvis@rccalaw.com

/s/ Harold J. Barkley, Jr.
HAROLD J. BARKLEY, JR.
Bar Number 2008
Chapter 12 Trustee
Post Office Box 5069
Jackson, MS 39296-5069
(601) 362-7153
hjb@hbarkley13.com

**LEASE CONTRACT**

ANN DOW SHURDEN, LESSOR

DELTA SKY LLC, LESSEE

STATE OF MISSISSIPPI

COUNTY OF SUNFLOWER

This contract is made and entered onto and executed in duplicate on this the 1st day of February, 2017 by and between ANN DOW SHURDEN and DELTA SKY, LLC.

**WITNESSETH:**

The lessor rent, demise, and let to the Lessee for a term beginning on the 1st day of March, 2017 and ending on the 31st day of December, 2017, the following property to wit:

That certain farm belonging to the Lessor in Sunflower County, Mississippi, commonly known as the Netterville Place, lying in section 3 and 8, township 23N, Range 3W, containing 382.8 acres of cropland as verified by the Sunflower County Farm Services Agency office as Farm #4830.

The agreed rental which the Lessee and Lessor agrees to is $50,000 due on or before the 31st of December, 2017.

Ann Dow Shurden

Delta Sky, LLC

**LEASE CONTRACT**

**REGGIE SHURDEN, LESSOR**

**DELTA SKY, STAFFORD SHURDEN, LESSEE**

**STATE OF MISSISSIPPI**

**COUNTY OF SUNFLOWER**

This contract is made and entered onto and executed in duplicate on this the 1st day of March, 2017 by and between REGGIE SHURDEN and DELTA SKY, STAFFORD SHURDEN.

**WITNESSETH:**

The lessor rent, demise, and let to the Lessee for a term beginning on the 1st day of March, 2017 and ending on the 31st day of December, 2017, the following property to wit:

That certain farm belonging to the Lessor in Sunflower County, Mississippi, commonly known as the Vance Place, lying in section 23 and 26, township 23N, Range 4W, containing 462.4 acres of cropland as verified by the Sunflower County Farm Services Agency office as Farm #4831.

The agreed rental which the Lessee and Lessor agrees to is $50,000 due on or before the 31st of December, 2017.

Reggie Shurden

Delta Sky, Stafford Shurden